## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 25-CR-165 (AHA)** |
| **RICARDO RUSH,** | |
| **Defendant.** | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. The defendant, Ricardo Rush, is before this court after pleading guilty to Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1); Assault with a Dangerous Weapon ("ADW"), in violation of 22 D.C. Code § 402; and Possession of a Firearm During Crime of Violence or Dangerous Offense ("PFCOV"), in violation of 22 D.C. Code § 4504(b), after he pulled out a firearm on a crowded Metrobus and threatened to kill two adults and their minor children. For the reasons that follow, the United States respectfully requests that the court sentence the defendant to a term of **120 months' imprisonment** and three years of supervised release.

### I.    FACTUAL BACKGROUND

The factual proffer to which the defendant agreed as part of his June 17, 2025, guilty plea establishes the following uncontested facts:

On March 8, 2025, at approximately 11:26 am, the defendant Ricardo Rush, boarded WMATA Bus 4752 at 332 Ridge Road, SE, Washington, D.C. At approximately 11:31 am, Complainants D.P. and B.F., accompanying two small children G.P. and A.F., boarded WMATA

Bus 4752, at 4809 Texas Avenue, SE, Washington, D.C. The complainants sat in the row in front of the defendant. Within seconds of the complainants taking a seat, the defendant started talking to them. D.P. and B.F. looked at the defendant as he spoke to them. After an initial conversation, D.P. turned back around and faced the front of the bus. B.F., however, kept her eyes on the defendant.

At approximately 11:32 am, the defendant stood up, displaying a black firearm in his left hand. The defendant stated "Bitch, sit down, this isn't a toy" or something to that affect and pointed the firearm at B.F.'s face. While the bus was pulled over, the defendant continued arguing with B.F., threatening her, and pointed the firearm at B.F.'s face a second time. During this interaction, the defendant waived the firearm at D.P., B.F., G.P. and A.F. and threatened to kill all four people while waiving a firearm at them. At approximately 11:33 am, the defendant exited the bus. Once outside the bus, the defendant pointed the firearm at B.F. a third time, and subsequently fled on foot on East Capitol Street, SE, Washington, D.C.

At approximately 11:35 am, the defendant re-boarded the bus and threatened to kill D.P. and B.F. again, while holding the firearm. During this interaction, the defendant continued to point the firearm at D.P. The defendant head-butted D.P. and pressed his forehead against D.P.'s forehead before he exited the bus. The defendant stated, "I know where your bitch ass go get your kids from and all that." After threatening the complainants again, the defendant exited the bus and fled the scene once more.

On April 10, 2025, at approximately 11:10 am, the defendant was located at his residence in Washington, D.C. At approximately, 12:15 pm, officers located a black Masterpiece Arms Defender semi-automatic handgun (S/N FX53587) loaded with one round in the chamber, and which contained a high-capacity magazine with 18 rounds of ammunition loaded in it. They also

recovered a magazine that contained 13 rounds of 45 Auto ammunition inside of it. The defendant voluntarily and  on  purpose, possessed this firearm and this ammunition on this date. The defendant knew that the firearm he possessed on April 10 was a firearm.

There are no firearms or ammunition manufacturers in Washington, D.C. Therefore, the Masterpiece Arms Defender semi-automatic handgun and rounds of ammunition officers recovered must have travelled across state lines.

The defendant has a prior criminal felony conviction punishable by a term of incarceration greater than one year. On May 13, 2022, the defendant was convicted of Assault with A Dangerous Weapon (Firearm) in Washington, D.C. Superior Court case number 2021-CF3-004168 and sentenced to 3 years' confinement with 18 months suspended. As a result, the defendant was aware at the time of his arrest in the instant case that he had a prior conviction for a crime punishable by more than one year.

## II.    **PROCEDURAL HISTORY**

On April 21, 2025, the defendant was arrested and had his initial appearance before the United States Magistrate Judge Moxila A. Upadhyaya. At the hearing, the defendant conceded detention.

On June 11, 2025, the United States Attorney's Office for the District of Columbia filed a three-count Information, charging the defendant with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1); Assault with a Dangerous Weapon ("ADW"), in violation of 22 D.C. Code § 402; and Possession of a Firearm During Crime of Violence or Dangerous Offense ("PFCOV"), in violation of 22 D.C. Code § 4504(b). *See* ECF No. 11.

On June 17, 2025, the defendant pleaded guilty to all counts contained within the

Information. *See* ECF No. 13. In return, the government agreed to ask for a sentence within the calculated guideline range sentence of 117 to 213 months' imprisonment. *Id.* at 6.

### III.    <u>LEGAL STANDARD</u>

Under the plea agreement, Defendant Rush agreed that the sentence in this case would be determined by the court, pursuant to the factors set forth in 18 U.S.C. § 3553(a), including a consideration of the Voluntary Sentencing Guidelines for the District of Columbia. The listed factors in 18 U.S.C. § 3553(a) include the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
(i) issued by the Sentencing Commission ...; and
(ii) that, . . . are in effect on the date the defendant is sentenced; ...

(5) any pertinent policy statement –
(A) issued by the Sentencing Commission ... and
(B) that, . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among

defendants with similar records who have been found guilty of
similar conduct; and

(7) the need to provide restitution to any victims of the offense.

## IV.    ANALYSIS OF THE D.C. SENTENCING GUIDELINES

Under the D.C. Voluntary Sentencing Guidelines, ADW is a Group 6 Offense and PFCOV
is a Group 5 Offense. Defendant Rush is estimated to have a criminal history of two, placing him
in criminal history category "C." As such, the defendant's guideline range for ADW is 30-72
months' incarceration, and 60-108 months' incarceration for the PFCOV, with a mandatory
minimum of at least 60 months.

## V.    ANALYSIS OF U.S. SENTENCING GUIDELINES

In the instant case, the defendant received a Base Offense Level (BOL) of 20 for Unlawful
Possession of a Firearm. His BOL decreased by 3 total points because he accepted responsibility
in the case and pled guilty early. *See* USSG §§3E1.1(a) and (b). Therefore, the defendant's adjusted
BOL is 17. Moreover, the defendant has a total criminal history score of three, placing him in
criminal history category II. Under the U.S.S.G., the defendant's guideline range for Unlawful
Possession of a Firearm is 27 to 33 months' incarceration.

## VI.    THE GOVERNMENT'S SENTENCING RECOMMENDATION

The crimes at issue here merit a lengthy term of incarceration. In this case, sentencing is
guided by 18 U.S.C. § 3553(a). Some of the factors this court must consider include: the nature
and circumstances of the offense, 18 U.S.C. § 3553(a)(1); the history and characteristics of the
defendant, *id.*; the need for the sentence imposed to reflect the seriousness of the offense and to
promote respect for the law, 18 U.S.C. § 3553(a)(2)(A); and the need for the sentence to afford
adequate deterrence, 18 U.S.C. § 3553(a)(2)(B).

### A.  Nature and Circumstances of the Offense

The nature and circumstances of this offense are serious and warrant a very lengthy sentence of imprisonment.

First, on March 8, 2025, the defendant did more than possess a firearm. He pulled out a loaded uzi-style pistol on a public bus, pointed that loaded gun at two adults and their minor children and threatened to kill them – all of which was captured on video. *See* Gov. Ex. 1 at 11:31:48-11:36:48; *See* Gov. Ex. 2 at 11:31:39-11:36:44. On that date, B.F. and her partner, D.P., boarded WMATA Bus 4752 at 332 Ridge Road, SE, Washington, D.C. with their children, G.P. (20 months) and A.F. (4 years old). Cameras aboard the bus captured the defendant board the bus, walk to the back of the bus, and take a seat. Within seconds of the B.F. and D.P. taking a seat, the defendant, who knew D.P. because he shares a child with the defendant's sister, started talking to them and harassing them. After D.P. tried to de-escalate the situation, the defendant stood up, displayed a black uzi-style handgun in his left hand, stated "Bitch, sit down, this isn't a toy," referencing the pistol, and then pointed the firearm at B.F.'s face. *See* Figures 1 and 2, below. What's notable is that B.F.'s child and step-child were inches away and saw the defendant stick a gun in B.F.'s face and threaten to kill her.



**Figure 1: Defendant holding a black uzi-style handgun in his left hand. Gov't Ex. 1 at 11:32:36.**



**Figure 2: Defendant holding a black uzi-style handgun in his left hand. Gov't Ex. 2 at 11:32:36.**

In response to the commotion the defendant caused, the bus pulled over. While the bus was pulled over, the defendant continued arguing with B.F., threatening her, and pointed the firearm at B.F.'s face a second time. During this interaction, the defendant waived the firearm at B.F., D.P., their two minor children and threatened to kill them. Once the bus stopped, the defendant got off the bus and pointed the gun at B.F. again.



**Figure 3: Defendant pointing the gun at B.F.'s face. Gov't Ex. 1 at 11:33:08.**

Second, what is particularly egregious is that after the defendant pointed a firearm and threatened to kill B.F., D.P. and their children once, he got off the bus, *then re-entered the bus a second time* and once again threatened B.F. and her family. *See* Gov. Ex. 1 at 11:35:18-11:36:48; *See* Gov. Ex. 2 at 11:35:18-11:36:44. After the defendant threatened B.F. and her family, he could have walked away. But instead of walking away, he escalated the situation and got on the bus a second time and threatened them again. During this interaction, the defendant continued to point the firearm at B.F. *See* Figure 4, below.



**Figure 4: Defendant pointing the gun at B.F. Gov't Ex. 2 at 11:36:20.**

Finally, the firearm recovered from the defendant's home on April 10, 2025 is a seriously dangerous weapon and one that he appeared to use to threaten B.F. and her family on March 8, 2010. On April 10, officers recovered a black Masterpiece Arms Defender semi-automatic handgun (S/N FX53587) loaded with one round in the chamber, which contained a high-capacity magazine with 18 rounds of ammunition loaded in it. *See* Figures 5-7, below. The magazine was manufactured to hold 20 rounds of 5.7 caliber ammunition.



**Figure 5: Black Masterpiece Arms Defender semi-automatic handgun (S/N FX53587).**



**Figure 6: High-capacity magazine with 18 rounds of ammunition.**



**Figure 7: 18 rounds of ammunition in the high-capacity magazine.**

In addition, based on the long barrel with holes in it, the uzi-style pistol recovered from the defendant's residence is consistent in appearance with the pistol the defendant threatened the complainants with on March 8. *Compare* Figures 8-10, below.



**Figure 8: Defendant with pistol.**



**Figure 9: Defendant with uzi-style pistol.**



**Figure 10: Recovered pistol.**

### B. History and Characteristics of the Defendant

A lengthy sentence is warranted in this case because the defendant has a history of committing seriously violent crimes.

The defendant's first adjudication is reflected in paragraph 43 of the Presentence Investigation Report (PSR). *See* PSR at 11. This adjudication was not the defendant's first brush with the legal system. The defendant was previously convicted of Assault with a Dangerous Weapon (firearm) (ADW) and Attempted Second-Degree Cruelty to Children on May 13, 2022 in D.C. Superior Court case number 2021-CF3-004168. *See* PSR at 12.

According to the Proffer of Facts, as agreed to by the defendant, the defendant threatened to kill the mother of two of his children, Crystal Wilkerson, on July 15, 2021. *See id.* In response, Ms. Wilkerson applied for and was granted a Temporary Protection Order (TPO). On July 23, 2021, one week after the defendant threatened to kill Ms. Wilkerson, she was staying in a friend's apartment with her five children – ranging in age from 6 months to 7 years of age. *Id.* The defendant entered the friend's apartment with a small revolver and held the revolver to the back of Ms. Wilkerson's head while she was holding her six-month old child, R.W. *Id.* Ms. Wilkerson, her

friend, and four of the five children escaped from the apartment and ran towards the local elementary school. As they did, the defendant ran out of the apartment behind them, picked up one of the five children, who was approximately 18 months old at the time, and, using his left hand, fired at least one bullet at Ms. Wilkerson, who was carrying her six-month-old child, R.W., as she ran away with her other children. *Id.* The defendant kidnapped the 18-month-old child and fled the scene. He was located nearby more than an hour later with the 18-month-old child. *Id.*

Because the defendant threatened to kill the mother of two of his children, held a gun to her head while she was holding a baby, fired a gun at the mother of his children while she held another of her babies as she fled in terror, and then kidnapped an 18 month old child, the defendant was indicted on 18 counts of the following: (1) three counts of Assault with a Dangerous Weapon (ADW); (2) four counts of Assault With A Dangerous Weapon Against A Minor; (3) seven counts of Possession of a Firearm During a Crime of Violence; (4) two counts of Threatening to Kidnap or Injure a Person; (5) one count of Carrying a Pistol Without a License; and (5) one count of Unlawful Entry - Private Property. *See* Gov't Ex. 3 – Indictment: 2021-CF3-004168. Despite the serious allegations against the defendant, he ultimately pled guilty to one count of ADW and one count of Attempted Second-Degree Child Cruelty. The defendant completed his supervised probation on January 23, 2025.

Not even seven weeks after completing supervision for shooting at the mother of his children, the defendant committed the instant offense, where he boarded a crowded metrobus with a loaded gun and threatened to kill B.F., D.P., and their small children. As the defendant's criminal history shows, he is a violent man who has no problem using violence against people. The court should consider the defendant's violent nature, his willingness to use violence, and his history of endangering children and sentence him to 120 months' imprisonment.

Ultimately, the defendant's criminal history clearly shows that he is a dangerous person who threatens to kill people and is willing to carry out his threats, including against children. First, the defendant threatened to kill the mother of his children and fired a gun at her. Second, he kidnapped an 18-month-old child. Third, less than two months after completing his probation, the defendant threatened to kill B.F. and D.P. in front of their children.

### C. The Need for the Sentenced Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

While thankfully no one was injured in the instant case, the recklessness and impulsivity combined with the firepower the defendant possessed heightened the danger to the community. A significant term of incarceration is necessary to incapacitate the defendant and protect the community.

As mentioned previously, the defendant brought a loaded firearm onto a bus and threatened to kill two adults and their minor children. Not only did the defendant threaten to kill two small children, but he did so on a crowded bus – in front of families and other small children. As is evident from a video of the incident, a mother and her small daughter were sitting directly in front of the defendant when he threatened to kill B.F. and her family. One can see the look of horror on this innocent bystander's face as she sees what the defendant is doing and hastily rushes herself and her daughter off the bus and to safety to evade possible random gunfire. *See* Gov't Ex. 2 at 11:32:20. A lengthy sentence appropriately reflects the seriousness of the defendant's actions.

### D. The Need for the Sentence to Afford Adequate Deterrence

A significant sentence of incarceration is needed to both generally deter violent offenses in the District and to deter Defendant Rush from perpetrating violent crimes in the future. *See* 18 U.S.C. 3553(a)(2)(B). As is evident from the defendant's criminal history, he is a violent man who has no qualms threatening children and placing them in danger. Threatening children with a loaded

firearm is unacceptable. It's clear that the defendant did not learn his lesson after he was previously sentenced in June 2022 to 36 months' confinement for endangering children. The sentence this court imposes must be sufficient to deter Defendant Rush from carrying out similar crimes after his release.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully recommends that the court sentence Defendant Ricardo Rush to 120 months' imprisonment, to be followed by three years of supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO.
UNITED STATES ATTORNEY

By:      /s/ *Jared English*
JARED ENGLISH
D.C. Bar No. 1023926
Assistant United States Attorney
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-465-0089
Email: Jared.English@usdoj.gov

# Government Exhibit 1
## (Video Provided Separately)

# Government Exhibit 2
## (Video Provided Separately)

# Government Exhibit 3

SUPERIOR COURT

OF THE

DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on January 7, 2022

| | |
|---|---|
| THE UNITED STATES OF AMERICA | Criminal No:    2021 CF3 004168 |
| v. | |
| RICARDO RUSH | Violations:<br>22 D.C. Code, Section 402; |
| PDID: 664-004 | 22 D.C. Code, Section 4504(b);<br>22 D.C. Code, Sections 402, 3611;<br>22 D.C. Code, Section 1810;<br>22 D.C. Code, Section 4504(a)(1);<br>22 D.C. Code, Section 3302(a)(1) (2001 ed.) |
| | (Assault with a Dangerous Weapon; Possession<br>Of a Firearm During Crime Of Violence Or<br>Dangerous Offense; Assault with a Dangerous<br>Weapon, Committed Against a Minor; Threatening<br>To Injure/Kidnap a Person; Carrying a Pistol<br>Without a License (Outside Home or Place of<br>Business); Unlawful Entry (Private Property)) |

The Grand Jury charges:

FIRST COUNT:

On or about July 23, 2021, within the District of Columbia, Ricardo Rush assaulted Crystal Wilkerson

with a dangerous weapon, that is, a firearm.  (Assault with a Dangerous Weapon, in violation of 22 D.C.

Code, Section 402 (2001 ed.))

SECOND COUNT:

On or about July 23, 2021, within the District of Columbia, Ricardo Rush did possess a firearm while

committing the crime of Assault With a Dangerous Weapon as set forth in the first count of this indictment.

(Possession Of a Firearm During Crime Of Violence Or Dangerous Offense, in violation of 22 D.C. Code,

Section 4504(b) (2001 ed.))

THIRD COUNT:

On or about July 23, 2021, within the District of Columbia, Ricardo Rush assaulted Raechonna Bond

with a dangerous weapon, that is, a firearm.  (Assault with a Dangerous Weapon, in violation of 22 D.C.

Code, Section 402 (2001 ed.))

FOURTH COUNT:

On or about July 23, 2021, within the District of Columbia, Ricardo Rush did possess a firearm while committing the crime of Assault With a Dangerous Weapon as set forth in the third count of this indictment. (Possession Of a Firearm During Crime Of Violence Or Dangerous Offense, in violation of 22 D.C. Code, Section 4504(b) (2001 ed.))

FIFTH COUNT:

On or about July 23, 2021, within the District of Columbia, Ricardo Rush assaulted Crystal Wilkerson with a dangerous weapon, that is, a firearm.  (Assault with a Dangerous Weapon, in violation of 22 D.C. Code, Section 402 (2001 ed.))

SIXTH COUNT:

On or about July 23, 2021, within the District of Columbia, Ricardo Rush did possess a firearm while committing the crime of Assault With a Dangerous Weapon as set forth in the fifth count of this indictment. (Possession Of a Firearm During Crime Of Violence Or Dangerous Offense, in violation of 22 D.C. Code, Section 4504(b) (2001 ed.))

SEVENTH COUNT:

On or about July 23, 2021, within the District of Columbia, Ricardo Rush, an adult at least 2 years older than R.W., a minor under 18 years of age, that is, 6 months of age, assaulted R.W. with a dangerous weapon, that is, a firearm.  (Assault with a Dangerous Weapon Committed Against a Minor, in violation of 22 D.C. Code, Section 402, 3611 (2001 ed.))

EIGHTH COUNT:

On or about July 23, 2021, within the District of Columbia, Ricardo Rush did possess a firearm while committing the crime of Assault With a Dangerous Weapon as set forth in the seventh count of this indictment. (Possession Of a Firearm During Crime Of Violence Or Dangerous Offense, in violation of 22 D.C. Code, Section 4504(b) (2001 ed.))

NINTH COUNT:

On or about July 23, 2021, within the District of Columbia, Ricardo Rush, an adult at least 2 years older than A.W., a minor under 18 years of age, that is, 3 years of age, assaulted A.W. with a dangerous weapon, that is, a firearm.  (Assault with a Dangerous Weapon Committed Against a Minor, in violation of 22 D.C. Code, Section 402, 3611 (2001 ed.))

TENTH COUNT:

On or about July 23, 2021, within the District of Columbia, Ricardo Rush did possess a firearm while committing the crime of Assault With a Dangerous Weapon as set forth in the ninth count of this indictment. (Possession Of a Firearm During Crime Of Violence Or Dangerous Offense, in violation of 22 D.C. Code, Section 4504(b) (2001 ed.))

ELEVENTH COUNT:

On or about July 23, 2021, within the District of Columbia, Ricardo Rush, an adult at least 2 years older than A.W., a minor under 18 years of age, that is, 6 years of age, assaulted A.W. with a dangerous weapon, that is, a firearm. (Assault with a Dangerous Weapon Committed Against a Minor, in violation of 22 D.C. Code, Section 402, 3611 (2001 ed.))

TWELFTH COUNT:

On or about July 23, 2021, within the District of Columbia, Ricardo Rush did possess a firearm while committing the crime of Assault With a Dangerous Weapon as set forth in the eleventh count of this indictment. (Possession Of a Firearm During Crime Of Violence Or Dangerous Offense, in violation of 22 D.C. Code, Section 4504(b) (2001 ed.))

THIRTEENTH COUNT:

On or about July 23, 2021, within the District of Columbia, Ricardo Rush, an adult at least 2 years older than S.W., a minor under 18 years of age, that is, 7 years of age, assaulted S.W. with a dangerous weapon, that is, a firearm. (Assault with a Dangerous Weapon Committed Against a Minor, in violation of 22 D.C. Code, Section 402, 3611 (2001 ed.))

FOURTEENTH COUNT:

On or about July 23, 2021, within the District of Columbia, Ricardo Rush did possess a firearm while committing the crime of Assault With a Dangerous Weapon as set forth in the thirteenth count of this indictment. (Possession Of a Firearm During Crime Of Violence Or Dangerous Offense, in violation of 22 D.C. Code, Section 4504(b) (2001 ed.))

FIFTEENTH COUNT:

Between on or about July 15, 2021 and on or about July 23, 2021, within the District of Columbia, Ricardo Rush threatened to injure and kidnap Crystal Wilkerson. (Threatening To Injure/Kidnap a Person, in violation of 22 D.C. Code, Section 1810 (2001 ed.))

SIXTEENTH COUNT:

On or about July 23, 2021, within the District of Columbia, Ricardo Rush threatened to injure and kidnap Raechonna Bond. (Threatening To Injure/Kidnap a Person, in violation of 22 D.C. Code, Section 1810 (2001 ed.))

SEVENTEENTH COUNT:

On or about July 23, 2021, within the District of Columbia, Ricardo Rush did carry, openly and concealed on or about his person, in a place other than his dwelling place, place of business or on other land possessed by him, a pistol, without a license issued pursuant to law. (Carrying a Pistol Without a License (Outside Home or Place of Business), in violation of 22 D.C. Code, Section 4504(a)(1) (2001 ed.))

EIGHTEENTH COUNT:

On or about July 23, 2021, within the District of Columbia, Ricardo Rush, without lawful authority, did enter and attempt to enter certain property, that is, 5133 Call Place SE, Unit 103, against the will of Raechonna Bond, the lawful occupant thereof and the person lawfully in charge thereof. (Unlawful Entry (Private Property), in violation of 22 D.C. Code, Section 3302(a)(1) (2001 ed.))

Matthew M. Graves/cdw

MATTHEW M. GRAVES
United States Attorney
in and for the District of Columbia

A TRUE BILL:

Foreperson

# Government Exhibit 4
**(Victim Letter Provided Separately)**

# Government Exhibit 5

**(Victim Letter Provided Separately)**